# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GLENN DARNELL DEAN,

    Petitioner,

vs.

DWIGHT NEVEN, et al.,

    Respondents.

Case No. 2:12-cv-00323-JCM-GWF

**ORDER**

Before the court are the first amended petition for writ of habeas corpus (#12), respondents' answer (#37), and petitioner's reply (#40). The court finds that relief is not warranted, and the court denies the first amended petition.

After a jury trial, petitioner was convicted in state district court of one count each of conspiracy to commit kidnaping, first-degree kidnaping with the use of a deadly weapon, and robbery with the use of a deadly weapon. Ex. 12 (#13). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 23 (#14).

Petitioner then filed his first post-conviction habeas corpus petition in state district court. Ex. 26 (#14). The state district court denied the petition. Ex. 67 (#15). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 70 (#15).

Petitioner then filed in state district court a motion that he was actually innocent of the kidnaping charge. Ex. 77 (#16). The state district court denied the motion. Ex. 83 (#16).

While the actual-innocence motion was pending, petitioner filed his second post-conviction habeas corpus petition in state district court. Ex. 79 (#16). The state district court dismissed the

petition because it was untimely and successive. Ex. 88 (#16). <u>See also</u> Nev. Rev. Stat. §§ 34.726(1), 34.810. Petitioner appealed, and the Nevada Supreme Court affirmed for the same reasons. Ex. 123 (#31).

Petitioner filed in state district court a motion seeking to hold the prosecutor and the defense counsel in contempt. Ex. 118 (#16). The state district court denied the motion. Ex. 93 (#16). Petitioner appealed, and the Nevada Supreme Court affirmed the dismissal. Ex. 100 (#16).

Petitioner filed in state district court a motion for modification of his sentence. Ex. 97. The state district court denied the motion. Ex. 101 (#16). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 126 (#31).

While some of the state-court proceedings were continuing, petitioner commenced this action. The court appointed counsel, who filed the first amended petition (#12). Respondents moved to dismiss, arguing that petitioner had not exhausted all his grounds for relief. The court found that ground 2(A), ground 3, and ground 1 to the extent it challenged the sufficiency of the evidence for the counts of conspiracy to commit kidnaping and robbery with the use of a deadly weapon, were not exhausted. Order (#33). Petitioner elected to dismiss the unexhausted grounds. The answer (#37) and the reply (#40) followed.

Reasonable jurist would not find the court's conclusions regarding the exhaustion of ground 2(A), ground 3, and part of ground 1 to be debatable or wrong, and the court will not issue a certificate of appealability on these issues.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

1  28 U.S.C. § 2254(d).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the

2  merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v.

3  Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Id. (citation omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

The remaining part of ground 1 is a challenge to the sufficiency of the evidence supporting the conviction for first-degree kidnaping with the use of a deadly weapon.  "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

1  reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (emphasis in original).  "[T]he standard must be

2  applied with explicit reference to the substantive elements of the criminal offense as defined by state

3  law." <u>Id.</u> at 324 n.16.  Nevada defines first-degree kidnaping as:

> 4  A person who willfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away a person by any means whatsoever with the intent to hold or detain,
> 5  or who holds or detains, the person for ransom, or reward, or <u>for the purpose of committing sexual assault, extortion or robbery upon or from the person</u>, <u>or for the purpose of killing the</u>
> 6  <u>person or inflicting substantial bodily harm upon the person</u>, or to exact from relatives, friends, or any other person any money or valuable thing for the return or disposition of the
> 7  kidnapped person, and a person who leads, takes, entices, or carries away or detains any minor with the intent to keep, imprison, or confine the minor from his or her parents,
> 8  guardians, or any other person having lawful custody of the minor, or with the intent to hold the minor to unlawful service, or perpetrate upon the person of the minor any unlawful act is
> 9  guilty of kidnapping in the first degree which is a category A felony.

10  Nev. Rev. Stat. § 200.310(1) (emphasis added).  In the current first amended petition (#12),

11  petitioner argues that the absurdities and inconsistencies in the testimony, and the unreliability of the

12  victim, made the evidence insufficient to establish first-degree kidnaping.  On direct appeal,

13  petitioner focused on the lack of proof of the purpose of killing or inflicting substantial bodily harm

14  upon the victim or robbing the victim.  The Nevada Supreme Court held:

15  <u>Intent to kill or substantially injure</u>

> 16  Dean contends that there was insufficient evidence presented to support the jury's verdict for kidnapping because the State failed to prove that he had the intent to kill or substantially
> 17  injure the victim.  Specifically, the victim testified that Dean stated that he was going to "murk" the victim and "leave him to stink at Lake Mead."  The victim believed this to mean
> 18  that Dean was going to hurt or kill him.  Dean contends that the victim's "subjective interpretation of" the remark is "meaningless," and, to meet its burden of proof, the State
> 19  should have introduced other witnesses who could testify as to the meaning of Dean's statement.
> 20
> 21  We conclude that Dean's argument lacks merit.  Not only could the jury reasonably infer Dean's comments to "murk" the victim and "leave him to stink at Lake Mead" reflected an
>     intent to kill or substantially harm the victim, other evidence supported the State's theory in
> 22  this regard.  In particular, Dean forced the victim to remove his clothing and Dean took the victim's possessions and clothing, showed him a weapon, and forced him into a vehicle.
> 23  While Dean was on his cell phone, the victim, fearing that another person would enter the vehicle and prevent any escape, jumped from the moving vehicle and ran to safety, scraping
> 24  his hands and knees in the process.  A witness testified that the victim called her and asked for a ride.  When the witness went to pick him up, he hid in the backseat of the car, was
> 25  distressed, and stated, "I almost died."  She noted that the victim's hands and knees were bleeding.  We conclude that Dean's comments to the victim coupled with other evidence
> 26  presented sufficiently supports Deans' kidnapping conviction on the theory that Dean intended to kill or cause the victim substantial bodily harm.

27

28

-4-

Ex. 23, at 2-3 (#14). On the issue of proof of the alternative theory that petitioner intended to rob the victim, the Nevada Supreme Court accepted for the moment petitioner's argument that there was no proof, but held, "Because the evidence supported a theory of kidnapping upon which the jury was properly instructed, the issue of factual sufficiency respecting the alternative theory is of no consequence." Id. at 3 (#14). Based upon the arguments presented to it, the Nevada Supreme Court reasonably applied Jackson. Any rational juror could infer from Dean's comments that the victim was going to be left "to stink at Lake Mead" that "murk" meant kill, and that the victim's body would be left in a cove that the petitioner thought was sufficiently out of the way to decompose. The other evidence that the Nevada Supreme Court outlined corroborated that account.

Petitioner's argument that the evidence against him was absurd, inconsistent, and unreliable is unpersuasive. The allegations in the first amended petition itself contain sufficient evidence to support the verdict for first-degree kidnaping with the use of a deadly weapon. Petitioner uses such phrases as "hard to believe," "common sense," and "impossible to believe" to describe the evidence but it is the duty of the jury, not this court to weigh the credibility of that evidence. Ground 1 is without merit.

Ground 2 contains two remaining claims of ineffective assistance of counsel. A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any

1  such set of rules would interfere with the constitutionally protected independence of counsel and
2  restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.
3        Review of an attorney's performance must be "highly deferential," and must adopt counsel's
4  perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."
5  Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's
6  conduct falls within the wide range of reasonable professional assistance; that is, the defendant must
7  overcome the presumption that, under the circumstances, the challenged action 'might be considered
8  sound trial strategy.'" Id. (citation omitted).
9        The Sixth Amendment does not guarantee effective counsel per se, but rather a fair
10  proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.
11  Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell
12  below an objective standard of reasonableness alone is insufficient to warrant a finding of
13  ineffective assistance.  The petitioner must also show that the attorney's sub-par performance
14  prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,
15  but for the attorney's challenged conduct, the result of the proceeding in question would have been
16  different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence
17  in the outcome." Id.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . .  The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

      In ground 2(B), petitioner argues that counsel should have objected to the theory of first-degree kidnaping that petitioner intended to rob the victim, because the prosecution had conceded in closing argument that the robbery was over before the kidnaping had started.  Petitioner raised this claim in his state habeas corpus petition.  On appeal, the Nevada Supreme Court held:

> Eleventh, appellant claimed that counsel was ineffective for not objecting to the State changing its theory of the case. Appellant failed to demonstrate deficiency or prejudice. The evidence appellant presented demonstrated only that the State focused its case on one of the pleaded alternate theories of intent for the kidnapping charge: for the purpose of committing murder. Further, although appellant claimed that there was only sufficient evidence to support robbery and a conspiracy to commit robbery, the law of the case is that there was sufficient evidence to support a charge of kidnapping in the first degree with a deadly weapon. . . . We therefore conclude that the district court did not err in denying this claim.

Ex. 70, at 8 (#15) (footnote and citation omitted). Petitioner characterizes the prosecution as abandoning the robbery theory of intent, Ex. 8, at 280-81 (#13), and then telling the jury that they could find the intent for first-degree kidnaping through robbery after that abandonment, id. at 283 (#13). However, the Nevada Supreme Court reasonably could conclude that the prosecution was doing something that all parties to all cases do all the time: The prosecution was arguing in the alternative. Ground 2(B) is without merit.

In ground 2(C), petitioner argues that counsel should have objected to hearsay testimony. After the victim was injured, he went with the mother of his girlfriend to a tuxedo-rental shop to pick up a white tuxedo that he had ordered for his high-school prom. Both the victim and the mother testified that the clerk at the shop did not want the victim to try on the white tuxedo because he was still bleeding. They further testified that the clerk gave petitioner both a white tuxedo and a black tuxedo, which presumably could conceal blood stains better if the victim was still bleeding when he needed to wear it. The Nevada Supreme Court considered this issue with regard to the victim's mother, and held:

> Third, appellant claimed that counsel was ineffective for not objecting to witness D. Vickers-Idrisov's hearsay testimony. Appellant failed to demonstrate prejudice. The witness's testimony repeated the statements of another regarding the victim's bleeding. Even if the statements were hearsay, appellant failed to demonstrate a reasonable probability of a different outcome had counsel objected because the witness, the victim, and Detective Leavitt each testified to their own observations of the victim's injuries. We therefore conclude that the district court did not err in denying this claim.

Ex. 70, at 3 (#15). Petitioner argues that the prosecution used the statements of the shop clerk to corroborate evidence of the victim's injuries. However, the victim, his girlfriend's mother, and a detective all testified that the victim was injured. If the jury did not believe those people, then they would not have believed the recounted statements of the shop clerk. If the jury did believe those people, then it is irrelevant whether they would have believed the recounted statements of the shop

clerk. The Nevada Supreme Court reasonably determined that petitioner suffered no prejudice from the lack of objection to these statements. Ground 2(C) is without merit.

In ground 4, petitioner claims that his sentencing violated the Due Process Clause of the Fourteenth Amendment because the pre-sentence investigation report contained inaccurate information and because the sentencing judge misread petitioner's criminal record. Petitioner presented a similar claim in a motion to modify his sentence. Ex. 97 (#16). The state district court denied the motion. Ex. 101 (#16). Petitioner appealed, and the Nevada Supreme Court affirmed, holding:

> In his motion filed on June 14, 2012, appellant asserted that the presentence investigation report contained a mistake as it stated he had been incarcerated six times for his six felony convictions, but appellant claimed that he had served concurrent terms for all of those convictions and therefore, had actually only been incarcerated once. Appellant failed to demonstrate that the district court relied on mistaken assumptions regarding his criminal record that worked to his extreme detriment.

Ex. 126, at 1 (#31). Petitioner repeats the same claim in the first amended petition. The court has read the pre-sentence investigation report, and the court does not agree. The report first notes in a table that petitioner has six felony convictions and six prison incarcerations. Ex. 117, at 3 (#17). The report then describes petitioner's criminal history: Convictions for three felonies in one case from Michigan, convictions for two felonies in a second case from Michigan, and a conviction for one felony in another case from Clark County, Nevada. This part of the report states that petitioner was paroled from all sentences in both Michigan cases on the same date, July 12, 2005. Id. at 4 (#17). In the report's description of petitioner's institutional history, it notes that all the sentences in both of the Michigan cases were served concurrently. Ex. 117, at 5 (#17).[1] Taken in context, the report shows that five of the six prison sentences run concurrently.

Petitioner argues that this court should review the claim de novo because the Nevada Supreme Court's decision relies on state law, not federal constitutional law. However, it is unclear whether the decisions of the Supreme Court of the United States even apply to petitioner. In

---

[1] The report is sealed because it contains confidential personal information in addition to the public record of petitioner's criminal history.

1  Townsend v. Burke, 334 U.S. 736 (1948), the trial judge had recited Townsend's criminal history

2  before sentencing Townsend to ten to twenty years in prison. However, one of the prior cases

3  actually had been dismissed by a magistrate, and juries had acquitted petitioner on two of the other

4  prior cases. The Court held:

> We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record. Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand.
>
> We would make clear that we are not reaching this result because of petitioner's allegation that his sentence was unduly severe. The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus. It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.
>
> Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.
>
> In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner.

21  Id. at 740-41. This court quoted the holding at length to show what the Supreme Court found truly

22  significant: Townsend was not represented by counsel. Townsend was decided before the Supreme

23  Court decided in Gideon v. Wainwright, 372 U.S. 335 (1963), that an indigent defendant has the

24  constitutional right to be represented by counsel in a criminal prosecution. In United States v.

25  Tucker, 404 U.S. 443 (1972), the Court overturned a sentence because it relied "at least in part upon

26  misinformation of constitutional magnitude," i.e., two prior convictions violated Gideon. To this

27  court's knowledge, the Supreme Court has not extended the holding of Tucker beyond the reliance

upon convictions obtained in violation of <u>Gideon</u>.² Even if the Supreme Court has so held, the court does not find any errors of constitutional magnitude. As noted above, the pre-sentence investigation report accurately stated petitioner's history of incarceration. At sentencing, the judge noted that petitioner had six prior prison terms, but he then noted that petitioner received probation on one of them, indicating that the judge was not under any incorrect impressions from the pre-sentence investigation report. Ex. 11, at 4-5 (#13). The judge was far more concerned that, at the age of 22, petitioner had been convicted previously of six felonies, and the current case added another three felonies to his history. The judge also did not believe the defense counsel's attempt to downplay the events as an attempt to scare the victim, and the judge believed that petitioner actually intended to kill the victim. <u>Id.</u> at 5 (#13). Ground 4 is without merit.

To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a certificate of appealability, after making a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

<u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). The court will grant a certificate of appealability on all grounds that the court decided on the merits.

IT IS THEREFORE ORDERED that the first amended petition for writ of habeas corpus (#12) is **DENIED**. The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on all grounds for relief that the court decided on the merits.

DATED: March 10, 2015.

_____
JAMES C. MAHAN
United States District Judge

---

²The court assumes that petitioner was represented in all his prior criminal cases.